**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 17-cv-1910-WJM-STV
Bankruptcy Action No. 16-21204-KHT, Chapter 13
Appeal from Bankruptcy Adversary Proceeding No. 17-01066-KHT

In re: LINO MIRANDA MUNOZ,

      Debtor.

_____

SUPERIOR CLEANING SERVICE, LLC,

      Appellant,

v.

LINO MIRANDA MUNOZ,

      Appellee.

---

## ORDER AFFIRMING IN PART AND VACATING IN PART THE JUDGMENT OF THE BANKRUPTCY COURT

---

      Lino Miranda Munoz ("Munoz") filed a Chapter 13 bankruptcy petition, and listed as one of his debts a judgment of approximately $91,000 owed to Superior Cleaning Service, LLC ("Superior").  Superior filed an adversary proceeding to establish that Munoz's debt is nondischargeable for "actual fraud," per 11 U.S.C. § 523(a)(2)(A).  The Bankruptcy Court found that only $2 of the debt was tainted by actual fraud, and so entered judgment in favor of Munoz, less $2.  Superior now appeals the Bankruptcy Court's judgment to this Court under Federal Rules of Bankruptcy Procedure 8001–02.

      After the close of merits briefing, the Court referred the matter to U.S. Magistrate Judge Scott T. Varholak for a recommended disposition.  (ECF No. 19.)  The Magistrate

Judge entered his recommendation on June 3, 2018 ("Recommendation"). (ECF No. 20.) The Recommendation rejects certain of Superior's arguments but nonetheless recommends vacating and remanding this matter to the Bankruptcy Court for additional analysis. Munoz filed a timely objection (ECF No. 27), and Superior filed a response to that objection (ECF No. 28). Superior did not file its own objection to the portions of the Recommendation disfavoring its position.

For the reasons explained below, the Court adopts the Recommendation in part and rejects it in part. As to the portion the Court rejects, the Court finds that the recommended relief would excuse Superior's explicit waiver of a certain theory of recovery. Accordingly, the Court will affirm the judgment of the Bankruptcy Court in all respects save for the question of whether Superior is entitled to attorneys' fees incurred in the adversary proceeding—a matter raised in the adversary proceeding, but which the Bankruptcy Court apparently overlooked.

## I. RULE 72(b) STANDARD OF REVIEW

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district court judge "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* An objection is proper if it is filed within fourteen days of the magistrate judge's recommendations and is specific enough to enable the "district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *United States v. 2121 East 30th*

*Street*, 73 F.3d 1057, 1059 (10th Cir. 1996) (internal quotation marks omitted).

Munoz timely objected to the Recommendation with sufficient specificity. (*See* ECF No. 27.) Accordingly, the Court reviews *de novo* the portions of the Recommendation to which Munoz has objected.

The Recommendation rejects what the Magistrate Judge accurately characterized as "Superior's primary argument—both before the bankruptcy court and on appeal." (ECF No. 20 at 8.) The Court will discuss the specifics of this primary argument below. For present purposes, the Court notes that Superior did not file an objection to the Recommendation. Thus, as to those portions of the Recommendation disfavoring Superior (and any portions disfavoring Munoz but not encompassed within his objection), the Court may review them "under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)). The Court will review these portions for clear error only. *See* Fed. R. Civ. P. 72(b), Advisory Committee Notes to 1983 Addition ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

## II.  BANKRUPTCY APPEAL STANDARD OF REVIEW

In reviewing a bankruptcy court's decision, the district court normally functions as an appellate court, reviewing the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error. 28 U.S.C. § 158(a); *In re Warren*, 512 F.3d 1241, 1248 (10th Cir. 2008).

## III.  BACKGROUND

### A.     The Parties' Commercial Relationship

Superior provides residential and new construction cleaning services. (Record

on Appeal (ECF No. 7-1) ("R.") at 7.)  Sometime in 2003 or 2004, Superior

subcontracted window cleaning operations to Munoz.  (R. at 163.)  The parties

memorialized the subcontracting relationship in an "Independent Contractor Agreement"

("Agreement").  (*Id.*)

## B.    The State Court Lawsuit & Judgment

In February 2014, Munoz sued Superior in Boulder County District Court ("State

Court") for breach of the Agreement and unjust enrichment.  (*Id.*)  Superior answered

and counterclaimed for breach of contract, fraud, violation of the Colorado Organized

Crime Control Act ("COCCA"),[1] and civil theft.  (R. at 163–64.)  In what must be one of

the rarest circumstances in civil litigation, Munoz failed to answer the counterclaims and

so the State Court entered a clerk's entry of default.  (R. at 164.)  Several months later,

Munoz obtained a new attorney who moved for relief from default, but the State Court

denied the motion.  (*Id.*)

In March 2015, the case went to a jury trial on liability and damages for Munoz's

claims against Superior, and on damages only for Superior's counterclaims against

Munoz.  (*Id.*)[2]  The jury found Superior not liable to Munoz on either of Munoz's theories

of relief.  (*Id.*)  As counterclaimed damages, the jury awarded Superior $1 in nominal

damages for breach of contract, $1 in nominal damages for fraud, $12,500 in punitive

damages for fraud, and nothing for civil theft or violation of COCCA.  (*Id.*)  The State

Court reduced the punitive damages award to $1 because Colorado prohibits punitive

---

[1] Colo. Rev. Stat. § 18-17-104.

[2] The jury was instructed that Munoz had admitted the facts necessary to establish
liability on the counterclaims.  (*Id.*)

damages in excess of actual damages. (*Id.*)[3] Thus, the total damages award against Munoz was $3.

The Agreement contains a fee-shifting clause which awards fees to the prevailing party in "any dispute arising from or related to" the Agreement. (R. at 103.) Superior moved for its fees under this provision, and the State Court granted that motion. (R. at 102–05.) The State Court's order specifically noted that Superior was claiming all of its fees (regardless of whether they were incurred in defending against Munoz's claims or prosecuting Superior's counterclaims) but Munoz "did not raise specific challenges to line items charged by [Superior's] counsel." (R. at 103.)

Munoz then filed certain motions to reconsider and for relief from judgment on both liability and attorneys' fees, which the State Court denied. As relevant here, the State Court's order denying relief from judgment specified that Superior was the prevailing party under the fee-shifting clause because

> [Munoz] did not prevail on [his] own claims for breach of contract and unjust enrichment. Thus, [Superior] was the prevailing party on the claims brought by [Munoz]. Further, in addition to the nominal damages, the jury awarded $12,500 in punitive damages on [Superior's] counterclaims. Regardless of the Court's reduction of the punitive damages award consistent with the statutory limitation, [Superior] prevailed in obtaining punitive damages. Thus, [Superior] prevailed both on [Munoz's] claims and on its own counterclaims.

(R. at 128.)

In May 2016, the State Court reduced the jury's $3 damages award and the attorneys' fees award to a single judgment of $90,733.79 ("Judgment"). (*See* R. at 165; *see also* R. at 66, 147, 165.) In other words, the State Court lawsuit started out as

---

[3] *See* Colo. Rev. Stat. § 13-21-102(1)(a).

Munoz's attempt to seek relief from Superior but ended up granting meaningful relief to no one except Superior's attorneys, at Munoz's expense.

## C.      Bankruptcy Court Proceedings & Decision

Munoz filed for Chapter 13 bankruptcy protection in November 2016.  (ECF No. 7-2 at 5.)  He listed his residential mortgage as his only secured debt and the Judgment as his only unsecured debt.  (*Id.* at 30–31.)  For unclear reasons, he listed the amount of the Judgment as $90,933.79, not $90,733.79.  (*Id.*)

In February 2017, Superior filed an adversary proceeding to establish that the Judgment may not be discharged in bankruptcy.  (R. at 6.)  Superior invoked 11 U.S.C. § 523(a)(2)(A), which provides:

> A discharge under . . . this title does not discharge an
> individual debtor from any debt—
>
> * * *
>
> for money, property, services, or an extension, renewal,
> or refinancing of credit, to the extent obtained by—
>
> > false pretenses, a false representation, or actual fraud
> > . . . .

Superior argued that the entire Judgment was "derivative from the jury verdict . . . awarding Superior damages on its fraud claim" so the entire Judgment "is non-dischargeable" due to "actual fraud."  (R. at 8.)

Superior soon moved for summary judgment in the adversary proceeding.  (R. at 45.)  Superior argued that "the jury in the [State Court] Case determined that Munoz had committed 'actual fraud' and entered damages in favor of Superior accordingly" and so "Munoz is collaterally estopped from re-litigating [the 'actual fraud'] issue."  (R. at 53–54.)  Moreover, Superior argued that the attorneys' fees award is properly considered a

debt connected to the actual fraud, and so is non-dischargeable. (R. at 50–53.) Thus, in Superior's view, it was entitled to a judgment of non-dischargeability for $90,733.79, plus postjudgment interest *and* attorneys' fees and costs incurred in the adversary proceeding itself (per the Agreement's fee-shifting clause). (R. at 50, 54–55.)

As relevant here, Munoz responded that the State Court had never apportioned "the amount of Attorneys' Fees granted in defending against Mr. Munoz's claims versus each of the Counterclaims." (R. at 100.) Thus, Munoz argued that the Bankruptcy Court could deny summary judgment because Superior failed to prove that the attorneys' fees award should be treated as flowing entirely from fraud. (*Id.*)

As to this argument, Superior replied that a Supreme Court decision, *Cohen v. de la Cruz*, 523 U.S. 213 (1998), barred the Bankruptcy Court from attempting to apportion the attorneys' fees award. (R. at 157–58 ("There is no difference [between the argument rejected in *Cohen* and] the argument Munoz makes here, as he seeks to piecemeal the [Judgment], isolating only the 'portion' of the overall award that is attributable to the fraud claim. * * * [D]issecting the [Judgment] as Munoz demands [would be] in direct contravention of *Cohen*.").) The Court will discuss *Cohen* in Part IV.A, below.

The Bankruptcy Court issued its Summary Judgment Order in July 2017. (R. at 163.) It found that the State Court lawsuit satisfied all the requirements under Colorado law for collateral estoppel (*i.e.*, issue preclusion) as to the following matters:[4]

- that Munoz committed fraud;

---

[4] *See* 28 U.S.C. § 1738 (requiring federal courts to give the outcome of a state judicial proceeding the same effect that it would have in later proceedings brought in that state's courts).

- that $1 in actual damages and $1 in punitive damages is attributable to the fraud; and

- that the attorneys' fees portion of the Judgment derived from "liability in contract [*i.e.*, the Agreement's fee-shifting clause, *see* Part IV.B.2, below], not fraud."

(R. at 168–69.)  Thus, the Bankruptcy Court concluded that the Judgment was only non-dischargeable as to the $2 attributable to fraud.  (R. at 169–70.)  The Bankruptcy Court said nothing about Superior's request for prevailing party fees in the adversary proceeding itself, apparently denying that request *sub silentio.*  (*Id.*)

In sum, the Bankruptcy Court *agreed* with Superior on the general argument that issue preclusion applies, but the Bankruptcy Court then used issue preclusion *against* Superior to find that the Judgment had been apportioned in a way that exempted only $2 from dischargeability.

## D.    Arguments on Appeal and the Magistrate Judge's Recommendation

Superior appealed to this Court.  (ECF No. 1.)  Notably, Munoz did not cross-appeal the Bankruptcy Court's decision that issue preclusion applies, or that the $2 obviously attributable to Superior's fraud counterclaim is nondischargeable.  (*See* ECF No. 20 at 13 n.8, 18–19.)

Superior's opening brief argues that the entire Judgment qualifies as a "debt" under Colorado state law, and that the Supreme Court's *Cohen* case, mentioned above, requires the Bankruptcy Court to treat the entire Judgment as non-dischargeable.  (ECF No. 8 at 14–24.)  Superior also reasserts its argument for prevailing party fees in the adversary proceeding.  (*Id.* at 24–26.)

Munoz's response brief attacks Superior's premise that "dischargeability is an all or nothing proposition." (ECF No. 9 at 12 (internal quotation marks omitted).) In Munoz's view, the Bankruptcy Court properly applied issue preclusion to exempt from discharge "only the damages Superior demonstrate[d] that the jury and/or the State Court assessed against [him] on account of the fraud." (*Id.* at 17.) Munoz also specifically attacked Superior's failure to argue that apportionment is possible between the contract and fraud damages and that an apportionment analysis might show that all or some significant part of the Judgment should be deemed attributable to the fraud: "[I]nstead of demonstrating how the damages awarded for the breach of contract and attorneys' fees were attributable to the finding of fraud, Superior presented the blanket argument that 'the fraud claim is inextricably intertwined with the other claims asserted and litigated during the pendency of the [State Action].'" (*Id.* at 17–18 (quoting R. at 158) (alteration in original).) Thus, Munoz argued, because "Superior failed to demonstrate that the State Court awarded damages for the breach of contract and attorneys' fees on account of the fraud, the Bankruptcy Court did not [commit] error in finding that only $2.00 of the [Judgment] falls within the ambit of the fraud exception to discharge." (*Id.* at 18.) Finally, Munoz defended the Bankruptcy Court's apparent decision not to award prevailing party fees in the adversary proceeding. (*Id.* at 18–22.)

Superior's reply brief doubles down: "[D]ischargeability truly is an all or nothing proposition." (ECF No. 11 at 6 (internal quotation marks omitted).) Superior then seeks to support this proposition through certain cases cited in Munoz's response brief. (*Id.* at 6–10.) Finally, Superior restates its argument that it should receive prevailing party fees in the adversary proceeding. (*Id.* at 10–13.)

The Magistrate Judge agreed with Munoz that the Judgment may be segregated into damages for breach of contract, damages for fraud, and attorneys' fees and costs. (ECF No. 20 at 10.) Thus, the Magistrate Judge reasoned, "it was not error for the Bankruptcy Court to separately considered the dischargeability of each component of the Judgment." (*Id.* at 11.)

The Magistrate Judge then turned to $1 in contract damages and concluded that the Bankruptcy Court committed error because it apparently assumed that damages *awarded* for breach of contract may never be *attributable* to fraud. (*Id.* at 11–18.) The Magistrate Judge drew on a number of bankruptcy cases finding that "a creditor's breach of contract claim may arise out of—or be inextricably linked to—the debtor's fraud, such that," in a bankruptcy non-dischargeability analysis, "a separate award for breach of contract may properly be characterized as a debt obtained by false pretenses, a false representation, or actual fraud." (*Id.* at 17.) In the Magistrate Judge's view, the Bankruptcy Court must "look beyond the labels applied to" that $1 damage award and determine "the true nature of [the] debt." (*Id.* at 18 (internal quotation marks omitted).)

The Magistrate Judge next turned to the $2 that the Bankruptcy Court attributed to fraud and recommended affirmance given that no party appealed that part of the Bankruptcy Court's disposition. (*Id.* at 18–19.)

The Magistrate Judge then reached the attorneys' fees tail that has been wagging this litigation dog since the State Court entered the Judgment. The Magistrate Judge here found that the Bankruptcy Court had committed three errors. The first error was essentially the same error the Magistrate Judge already discussed in the context of the $1 contract award, namely, the assumption that a debt arising from contract (in this

case, attorneys' fees arising from a contractual fee-shifting clause) can never be attributable to "actual fraud" under 11 U.S.C. § 523(a)(2)(A). (*Id.* at 19–20.) The second error was the Bankruptcy Court's conclusion that the State Court had awarded prevailing party status to Superior solely on account of the breach-of-contract counterclaim. (*Id.* at 20–21.) "Given that the State Court awarded at least a portion of the attorneys' fees on the basis of the fraud counterclaim," the Bankruptcy Court had a duty to apportion the fee award as between the counterclaims. (*Id.* at 21–22.) The third error was the Bankruptcy Court's failure to consider the costs portion of the Judgment separately from the fees portion. (*Id.* at 22–23.)

Consequently, the Magistrate Judge recommended vacating the portions of the Bankruptcy Court's decision regarding contract damages, attorneys' fees, and costs, and remanding for further inquiry. The Magistrate Judge also recommended remand on the question of whether Superior deserved fees for the adversary proceeding itself, a question the Bankruptcy Court ignored. (ECF No. 20 at 23–24.)

It bears noting how the Magistrate Judge reached that recommended disposition, broadly speaking: (1) he *rejected* Superior's all-or-nothing argument; (2) he *accepted* Munoz's argument that the Bankruptcy Court could properly analyze dischargeability as to each portion of the Judgment; but then (3) he *turned Munoz's argument against him*, finding that the Bankruptcy Court had not properly analyzed the contract and attorneys' fees portions of the Judgment, thus giving Superior an opportunity on remand to make an apportionment case that it had thus far declared to be contrary to law.

## IV.  ANALYSIS

Idioms like "backfiring," "blowing up in your face," and "coming back to bite you" properly apply to every stage of this case.  Munoz filed a lawsuit for breach of contract and unjust enrichment and ended up with a judgment against him for nearly $91,000 (comprising almost entirely Superior's attorneys' fees).  Superior argued to the Bankruptcy Court that issue preclusion established the non-dischargeability of the entire Judgment but the Bankruptcy Court turned issue preclusion against Superior to find only $2 exempt from dischargeability.  And, in this appeal, Munoz convinced the Magistrate Judge that the Bankruptcy Court had been right to reject Superior's all-or-nothing argument, but the Magistrate Judge then extended that reasoning to Munoz's detriment, recommending vacatur rather than affirmance.

To determine the proper outcome, the Court will first analyze the portions of the Recommendation it may review for clear error, and then it will turn to the question of whether the matter should be remanded to the Bankruptcy Court for additional apportionment analysis.

## A.      Rejection of Superior's All-or-Nothing Argument

The Recommendation states, "[I]t was not error for the Bankruptcy Court to separately considered the dischargeability of each component of the Judgment."  (ECF No. 20 at 11.)  This is an explicit rejection of Superior's all-or-nothing argument and Superior filed no Rule 72(b)(2) objection to this portion of the Recommendation. Accordingly, the Court need only review for clear error.[5]

---

[5] In the "Conclusion" section of Superior's response to Munoz's objection to the Recommendation, Superior states:

Here, while Superior agrees with the Recommendations of the

Superior rested its all-or-nothing proposition on the Supreme Court's 1998 decision in *Cohen v. de la Cruz*, *supra*. There, a New Jersey administrative agency had entered an order against a landlord, Edward Cohen, requiring him to refund to his tenants about $30,000 he collected in excess of what a rent control ordinance allowed. 523 U.S. at 215. Cohen filed for bankruptcy and his tenants (like Superior here) filed an adversary proceeding under 11 U.S.C. § 523(a)(2)(A) to have the debt declared nondischargeable as the fruits of "actual fraud." *Id.* The tenants also sought treble damages and attorneys' fees under New Jersey's consumer fraud statute. *Id.* The bankruptcy court found in the tenants' favor, declaring the $30,000 refund obligation nondischargeable and also awarding about $90,000 in statutory treble damages, along with attorneys' fees and costs. *Id.* at 215–16. This award prompted the question that ultimately reached the Supreme Court: does nondischargeability under § 523(a)(2)(A) extend only to the value of what the debtor gained through fraud (for Cohen, $30,000), or does it extend to "all liability *arising from* fraud," including statutory treble damages? *Id.* at 214–15 (emphasis added).

The Supreme Court settled on the latter proposition. Interpreting various portions

---

Magistrate Judge, Superior further calls upon the [District] Court to affirmatively issue an Order in favor of Superior, fully reversing the factual findings and legal conclusions of the United States Bankruptcy Court for the District of Colorado and entering factual findings and legal conclusions in favor of Superior.

(ECF No. 28 at 9.) Superior then includes a prayer for relief asking for a "ruling that * * * the entire judgment entered against Munoz is nondischargeable under 11 U.S.C. § 523(a)(2)(A)." (*Id.*)

To the extent Superior intends this as an objection to any portion of the Recommendation, it is untimely, having been filed well after the deadline for objections. It is also insufficiently specific to trigger *de novo* review. *See 2121 East 30th Street*, 73 F.3d at 1059. Thus, clear error remains the appropriate standard of review for this portion of the Recommendation.

of the Bankruptcy Code, the Supreme Court reasoned, "Once it is established that specific money or property has been obtained by fraud, . . . any debt arising therefrom is excepted from discharge." *Id.* at 218. Thus, "§ 523(a)(2)(A) prevents the discharge of all liability arising from fraud, and . . . an award of treble damages therefore falls within the scope of the exception." *Id.* at 215.

In its opening brief on appeal, Superior argues that the Bankruptcy Court violated *Cohen* when it evaluated each portion of the Judgment separately. Specifically, Superior interprets *Cohen* as forbidding a portion-by-portion analysis of the Judgment because such an analysis would supposedly lead to the outcome the Supreme Court specifically rejected, *i.e.*, dischargeability limited only to the value the debtor gained through fraud. (ECF No. 8 at 19–24.) But Superior, which advanced this same argument below (*see* R. at 156–57), confuses two distinct concepts discussed in *Cohen*: whether 11 U.S.C. § 523(a)(2)(A) is limited to the value obtained through fraud (the answer is no); and whether a portion of an allegedly nondischargeable debt "arose from" amounts obtained by fraud. 523 U.S. at 215. Throughout the adversary proceeding and on appeal, Superior has been stuck on the first question, whereas the second question is actually the one at issue.

The Magistrate Judge rightly recognized that the Bankruptcy Court spotted Superior's misunderstanding of *Cohen* and properly rejected it. As the Bankruptcy Court aptly observed, "*Cohen* did not eliminate the requirement of causation." (R. at 169.) Undertaking that causation analysis, the Bankruptcy Court specifically found the $1 in *nominal* damages for fraud and the $1 in *punitive* damages for fraud to be nondischargeable. Neither dollar "corresponds to the *value* of what Mr. Munoz obtained

through his alleged fraud." (ECF No. 20 at 9 (emphasis in original).)  Thus, the record is clear that the Bankruptcy Court did not view itself restricted to declaring nondischargeable only those portions of the Judgment corresponding to value Munoz gained through fraud.  If that had been the Bankruptcy Court's approach, it would not have declared any portion of the Judgment nondischargeable because no portion of the Judgment corresponds to value gained through fraud (*i.e.*, amounts swindled from Superior).  The Magistrate Judge's analysis in this regard was entirely correct, and not clearly erroneous.

The Magistrate Judge also found inapposite a Tenth Circuit case on which Superior additionally relied, *In re Tsamasfyros*, 940 F.2d 605 (10th Cir. 1991). Understanding the significance of *Tsamasfyros*, however, requires first understanding a case on which it relied, *In re Gerlach*, 897 F.2d 1048 (10th Cir. 1990).  The question in *Gerlach* was, at bottom, the same question the Supreme Court later resolved in *Cohen*: whether 11 U.S.C. § 523(a)(2)(A) exempts only the value obtained by fraud at the creditor's expense, or if it sweeps more broadly.  *Id.* at 1050–51.  Anticipating the Supreme Court's *Cohen* holding, the Tenth Circuit concluded that the statute sweeps more broadly.  *Id.* at 1051.  In doing so, the Tenth Circuit expressed disagreement with cases holding that the creditor seeking a nondischargeability ruling must prove the portion of the debt corresponding to the loss the creditor suffered by fraud.  *Id.*  The Tenth Circuit instead expressed agreement with an Eleventh Circuit case stating that "the plain language of the statute suggests that dischargeability is an 'all or nothing' proposition."  *Id.* (quoting *Birmingham Trust Nat'l Bank v. Case*, 755 F.2d 1474, 1477 (11th Cir. 1985)).  In other words, *if* the debt is attributable to fraud, *then* it is entirely

nondischargeable—there is no requirement on the creditor to prove the amount of the debt that it could recover as damages if it were bringing a suit for fraud directly.

The phrase "dischargeability is an 'all or nothing' proposition" reappears in *Tsamasfyros*. There, the debtor faced a state court judgment in the amount of $162,500.92 for breach of fiduciary duty, among other causes of action, and the state court judge had found that the fiduciary breach had been "attended by circumstances of fraud." 940 F.2d at 605. In the later bankruptcy proceeding to determine the dischargeability of the judgment, the creditor argued that the state court's findings were issue preclusive. *Id.* at 605–06. The bankruptcy court agreed, and the Tenth Circuit eventually affirmed. *Id.* at 606–08.

The last paragraph of the Tenth Circuit's opinion notes the debtor's argument that "the state court used an erroneous standard in fixing . . . damages resulting from . . . fraudulent breach of his fiduciary duty at $162,500.92." *Id.* at 607. The Tenth Circuit rejected the argument because it was a collateral attack on a state court judgment—a judgment the debtor had never appealed through the state court system. *Id.* at 607–08. The Tenth Circuit then observed the following in a footnote: "In *In re Gerlach*, we approved language to the effect that dischargeability is an 'all or nothing' proposition . . . . It logically follows that a state court's calculation of damages may not be collaterally attacked in the bankruptcy court." *Id.* n.4 (citations omitted).

Superior favors this footnote, arguing that the Judgment similarly cannot be parsed or it would amount to an impermissible collateral attack. (*See* ECF No. 11 at 6–8.) But Superior appears to hold an incorrect assumption about *Tsamasfyros*, namely, that the $162,500.92 judgment in question was an undifferentiated judgment as

between all of the causes of action the creditor had asserted against the debtor in the state court lawsuit. It was not. The federal district court opinion from which the Tenth Circuit appeal was taken makes clear that the entire state court judgment comprised "$169,500 . . . for breach of contract and for breach of fiduciary duty." *In re Tsamasfyros*, 114 B.R. 721, 724 (D. Colo. 1990). Thus, the state court awarded $7,000 for breach of contract and the remaining $162,500.92 for "the decrease in value of [the creditor's] interest in [a] partnership [between the debtor and creditor]." *Id.* at 725. This latter portion was the measure of damages for fiduciary breach, which the state court found to have been attended by circumstances of fraud. Thus, when the Tenth Circuit quoted *Gerlach* for its "all or nothing" concept, it was using it in the same way *Gerlach* used it—*if* a portion of a judgment derives from fraud, *then* it is wholly nondischargeable. That does not answer the question of *whether* a judgment, or any portion of it, derives from fraud.

Moreover, the Magistrate Judge recognized that nothing the Bankruptcy Court did here could be analogized to collaterally attacking the standard through which the State Court assessed damages against Munoz, and so *Tsamasfyros* is inapposite. This is not clearly erroneous, but is, rather, a valid distinction.

In short, the Magistrate Judge did not clearly err in recommending affirmance of the Bankruptcy Court's rejection of Superior's all-or-nothing argument. The Court adopts that portion of the Recommendation.

**B.     Allocation of Contract Damages & Attorneys' Fees**

1.     <u>Waiver</u>

The Court now reaches the more difficult part of the Recommendation regarding contract damages, attorneys' fees, and costs. It is beyond question that, from the

beginning of the adversary proceeding through the filing of the Recommendation, Superior exclusively argued that the *entire* Judgment was nondischargeable and any attempt to apportion it would violate *Cohen* and principles of issue preclusion. In the adversary proceeding and on appeal, Superior steadfastly maintained this argument in the face of Munoz's explicit counterarguments that Superior failed to assemble a record through which the Bankruptcy Court could undertake a proper apportionment analysis.

The Recommendation, however, argues that the Bankruptcy Court's order should be vacated (*i.e.*, Superior should win this appeal) because the Bankruptcy Court did not undertake a proper apportionment analysis—the very sort of analysis against which Superior has argued until now.[6] Many cases support the Magistrate Judge's view that the Bankruptcy Court should have approached apportionment less mechanically. (*See* ECF 20 at 11–13, 15–17 (citing in analyzing relevant authority).) Indeed, in the wake of the Recommendation, Superior and Munoz appear to *agree*—at least in the abstract— that a bankruptcy court may look behind a judgment to determine what portion arose from the debtor's fraud, including portions nominally awarded under contract theories. (*See* ECF No. 27 at 2–3; ECF No. 28 at 3–6.) Nonetheless, Munoz objects that the Recommendation grants Superior "a second bite at the apple" (ECF No. 27 at 2), or in other words, a chance to do what it should have been doing all along—attempt to support a proper apportionment—despite its unwavering and explicit refusal to do so.

The Court finds Munoz's objection well-taken. When a party is aware of an argument it could make and explicitly rejects the argument, the party has waived it in

---

[6] Superior's response to Munoz's objection to the Recommendation endorses the Magistrate Judge's analysis (contrary to Superior's position up to that point) and then tries to show why that analysis necessarily would lead to a conclusion that the entire Judgment is nondischargeable. (ECF No. 28 at 3–7.)

the strictest sense of that term: "intentional relinquishment or abandonment of a known right." *United States v. Dahda*, 853 F.3d 1101, 1117–18 (10th Cir. 2017), *aff'd*, 138 S. Ct. 1491 (2018). *Dahda* itself is apposite. There, the district court construed a defendant's objection to a jury instruction "as a challenge to the instruction's content. But [at the charging conference, the defendant's counsel] immediately clarified: 'I don't want the instruction changed, I want it omitted because we're making an allegation that there was insufficient evidence to submit it.'" *Id.* at 1118 (emphasis removed). The Tenth Circuit accordingly found that the defendant waived any challenge to the content of the instruction, and thus could not request even plain error review. *Id.* at 1117–18.

The situation here is not materially different. Superior consistently argued below and on appeal that the entire Judgment is *per se* nondischargeable and that an apportionment analysis would be clear legal error. Superior maintained this argument in the face of Munoz's repeated statements—statements that were, to a degree, against his own interest—that apportionment might be possible but Superior has not requested, nor assembled a record sufficient for, proper apportionment findings. And specifically in this appeal, Superior has not argued that any particular part of the Bankruptcy Court's apportionment analysis was incorrect, only that the entire idea of apportionment is prohibited. Consequently, Superior waived any argument that the Bankruptcy Court apportioned the Judgment incorrectly.

The Court thus cannot accept the part of the Recommendation that would return the matter of contract damages and state-court attorneys' fees to the Bankruptcy Court for an apportionment analysis under different standards. "[T]he principle of party presentation [is] basic to our adversary system," and "[i]t would be an abuse of

discretion . . . for a court to override a [party's] deliberate waiver of a [legal theory]." *Wood v. Milyard*, 566 U.S. 463, 472–73 (2012) (internal quotation marks omitted).

    2.   <u>Plain Error</u>

As noted, true waiver is waiver even in the face of plain error, *Dahda*, 853 F.3d at 1117–18, and Superior has not argued for plain error, "which surely marks the end of the road for [that analysis]," *Evanston Ins. Co. v. Law Office of Michael P. Medved, P.C.*, 890 F.3d 1195, 1199 (10th Cir. 2018). But even if the Court could review the Bankruptcy Court's apportionment analysis under a plain error standard, the Court would not vacate that analysis.

"To succeed on a plain error review [in a civil case], the challenging party must demonstrate (1) an error (2) that is plain, meaning clear or obvious under current law, and (3) affecting substantial rights." *Royal Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175, 1180 (10th Cir. 2005). If these elements are satisfied, the Court "may exercise discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted; alterations incorporated). Exercising discretion in favor of reversal is inappropriate "absent exceptional circumstances." *Id.* Thus, plain error is "an extraordinary, nearly insurmountable burden." *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 802 (10th Cir. 2001); *cf. Aves ex rel. Aves v. Shah*, 997 F.2d 762, 765 (10th Cir. 1993) ("Plain error, however, is not to be equated with any detectable error.").

As to the Bankruptcy Court's apparent failure to inquire whether the contract damages can nonetheless be attributed to fraud, Superior cannot possibly satisfy the "fairness, integrity, or public reputation" prong of the plain error standard when the total amount at issue is $1. Moreover, as to both the contract damages and the attorneys'

fees, the Bankruptcy Court did not *plainly* err in concluding that if a portion of a state-court judgment was awarded under a contract, it cannot also be connected to "actual fraud." Or in other words, it was not "clear or obvious under current law," *Royal Maccabees*, 393 F.3d at 1180, that the Bankruptcy Court's task was to look beyond the contract label and inquire if amounts nominally awarded under a contract theory are nonetheless attributable to fraud. The Recommendation itself discusses cases throughout the country going both ways on this issue, and ultimately finds one line of those cases "more persuasive." (ECF No. 20 at 11–17.) The need to choose between competing authorities prevents any error from being "plain."

As to the attorneys' fees portion of the Judgment, the Recommendation goes on to state that

> [t]he factual premise for the Bankruptcy Court's decision regarding the attorneys' fees award is also mistaken. The Bankruptcy Court found that "[t]he State Court consistently cited only the Independent Contractor Agreement as the basis for its award of fees" and "[a]t no point did the jury or the State Court find attorney's fees should be awarded based on [Mr.] Munoz's fraud." [(R. at 169.)] Contrary to this contention, the State Court's orders awarding Superior its attorneys' fees repeatedly reference Superior's success on its fraud claim as one of the grounds upon which the State Court was awarding attorneys' fees under the Fee-Shifting Provision.

(ECF No. 20 at 20 (alterations in original).)[7] If this was an accurate summary of the Bankruptcy Court's reasoning, the error would be closer to "plain," because it suggests an obvious misreading of the State Court record. This Court concludes, however, that the Recommendation misapprehends the cited portion of the Bankruptcy Court's order.

---

[7] This is not an alleged error that Superior raised in its appellate briefs. Superior's response to Munoz's objection to the Recommendation likewise says nothing about this supposed error.

The State Court had two questions to answer before it could award prevailing party fees.  First, in light of the default "American rule" that the parties bear their own fees, what authority permitted the court to consider awarding fees to a prevailing party?  Second, was Superior a prevailing party?  The Recommendation assumes that the Bankruptcy Court was analyzing the State Court's answer to the second question.  But the Bankruptcy Court was actually looking at the first question, and it concluded that the State Court awarded prevailing party fees *under the authority of the Agreement*—as opposed to under the authority of a fee-shifting statute, for instance.

The Bankruptcy Court nonetheless went on, "The issue of liability for attorney's fees was actually litigated and necessarily adjudicated as a matter of contract liability.  At no point did the jury or the State Court find attorney's fees should be awarded based on Munoz's fraud."  (R. at 169.)  Admittedly this could be interpreted as a discussion of the State Court's answer to the second question, *i.e.*, whether Superior should be considered a prevailing party (in particular, a prevailing party on its fraud counterclaim).  In context, however, it is clear that the Bankruptcy Court's reference to an "actually litigated" "contract liability" is a reference to the parties' motion practice ("actually litigated") surrounding the Agreement's fee-shifting clause ("contract liability"), not the jury's resolution of Superior's counterclaims.  The mention of "Munoz's fraud," moreover, is simply a statement that the State Court did not find Munoz's fraud liability to be an additional reason for overriding the American rule.  In this light, there is no error in the Bankruptcy Court's observation that "[t]he State Court consistently cited only the [Agreement] as the basis for its award of fees."  (R. at 169.)

Accordingly, if the Bankruptcy Court committed any error in this part of its

analysis, it is the same alleged error already discussed: the presumption that a debt determined to arise from contract cannot be attributed to fraud for purposes of a nondischargeability analysis.  For the reasons explained above, any such error was not *plain* error.  Thus, even if Superior had only forfeited (not waived) its challenge to the Bankruptcy Court's method of apportionment, and even if Superior had argued for plain error review, it would not be appropriate to grant relief on that basis.

## C.    Attorneys' Fees in the Adversary Proceeding

Superior has consistently argued that the Agreement entitles it to prevailing party fees in the adversary proceeding.  The Bankruptcy Court's summary judgment order did not address this request, except perhaps through its concluding sentence: "In all other respects, the Motion is denied."  (R. at 170.)  It is therefore unclear whether the Bankruptcy Court unintentionally overlooked the argument, implicitly concluded that fee-shifting is not available in adversary proceedings, implicitly concluded that Superior was not a prevailing party, or something else.

The Recommendation would remand on this issue, and the Court agrees.  The Recommendation further concludes that fee-shifting is available in an adversary proceeding if a fee-shifting contract (such as the Agreement) applies.  The Court does not adopt that part of the Recommendation and expresses no opinion either way.  The Bankruptcy Court should address the matter in the first instance.  If the Bankruptcy Court finds that fee-shifting is available in theory, then the Bankruptcy Court must determine whether Superior should be deemed the prevailing party.[8]

---

[8] The Court recognizes that this is not a simple question.  On the one hand, Superior succeeded in establishing the nondischargeability of two-thirds of the State Court damages. But, two-thirds of the damages equals $2 in this case, and the rest of the Judgment remains dischargeable.  Again, the Court expresses no opinion on the proper outcome.

## V.  CONCLUSION

Accordingly, for the reasons set forth above, the Court ORDERS as follows:

1.     The Magistrate Judge's Recommendation (ECF No. 20) is ADOPTED IN PART

and REJECTED IN PART as stated in this Order;

2.     The judgment of the Bankruptcy Court is AFFIRMED IN PART and VACATED IN

PART as stated in this Order, and this matter is REMANDED to the Bankruptcy

Court to examine the question of whether Superior is entitled to its attorneys'

fees incurred in the adversary proceeding; and

3.     The Clerk shall enter judgment consistent with the foregoing and shall terminate

this case.  Munoz shall have his costs, if any, upon compliance with

D.C.COLO.LCivR 54.1.

Dated this 5th day of September, 2018.

BY THE COURT:

William J. Martinez
United States District Judge